# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

TANISHA L. BARNETT, )
)
      Plaintiff, )
)
vs. ) Case No. 10-CV-21-TLW
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
      Defendant. )

## OPINION AND ORDER

Plaintiff Tanisha Barnett seeks judicial review of a decision of the Commissioner of the Social Security Administration denying her claim for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3)(A). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. [Dkt. # 13].

Plaintiff's applications for disability insurance benefits and supplemental security income were filed on March 21, 2006, alleging an onset date of January 19, 2006. [R. 109, 112]. The Administrative Law Judge ("ALJ") held a hearing on September 10, 2007. [R. 28]. On October 18, 2007, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the SSA. [R. 23]. The Appeals Council denied review on November 12, 2009. [R. 1]. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481. On January 12, 2010, plaintiff filed the subject action with this Court. [Dkt. # 1].

The role of the Court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is only to determine whether substantial evidence supports that decision and whether the applicable

legal standards were applied correctly. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991).

**Background**

Plaintiff was born on July 25, 1974, and was 31 years old on the alleged onset date of her disability. [R. 21]. Plaintiff is 5'3" tall and weighs 282 pounds. [R. 44]. She graduated from high school in 1992, and subsequently completed training to work as an unarmed security guard. [R. 219]. Plaintiff worked as a security guard for five months and was promoted to a supervisor position following a company merger and continued in that capacity for an additional six months. [R. 219]. Prior to work in the security field, she sold Greyhound bus tickets, was a customer service representative, a dietary aid at St. Johns Medical Center and a home care aid for the elderly. [R. 134, 219]. Plaintiff quit working on January 17, 2006, to give birth to her fourth child. Plaintiff's children are 13, 12, 9 and 1 years old. [R. 219]. Plaintiff has never married. On January 18, 2006, plaintiff experienced shortness of breath during the 39th week of pregnancy with her fourth child. [R. 202-203]. She was admitted to Hillcrest Medical Center for an echocardiogram. Her heart was functioning at an estimated ejection fraction of 20 percent. [R. 208]. The next day, plaintiff had a cesarean delivery, followed by placement of a right heart catheterization and balloon pump. The balloon pump was removed on January 20, 2006, and she was discharged on January 25, 2006. [R.

216]. Plaintiff returned home and was able to care for herself and her baby. [R. 215]. Plaintiff alleges her disabilities arose as a result of her heart condition during her pregnancy and delivery. [R. 126]. Plaintiff had similar heart problems in 1997, after the birth of her son. [R. 216]. Specifically, she claims an inability to work because of congestive heart failure, enlarged heart and depression. [R. 32-40]. In this appeal, plaintiff does not challenge the ALJ's finding that plaintiff's heart condition does not render her disabled. Rather, she limits her appeal to challenging the ALJ's finding that her depression is not a disabling condition.

Plaintiff provided inconsistent statements as to the origin of her depression, and whether it is her heart problems or her depression which purportedly renders her disabled. On May 17, 2006, plaintiff said giving birth to her daughter caused her depression, but that she was depressed prior to her daughter's birth. [R. 252]. On August 9, 2006, she said yelling at her kids caused her anxiety. [R. 249]. On April 2, 2007, plaintiff said she was "overwhelmed" because her utilities were turned off, so she attempted suicide, and was admitted to the hospital. When she learned DHS would pay her utility bill, plaintiff's mood improved and she was discharged. [R 282-283]. During her hospital stay, plaintiff said that learning she could not have more children, being unemployed and unable to support her children, and having "out of control" children caused her depression. [R. 162, 284, 287].[1] On May 27, 2007, plaintiff said her "near death during labor," and congestive heart failure caused her depression. She also claimed her disability was caused by congestive heart failure, that all her symptoms were triggered postpartum, and that she wanted to go back to work. [R. 307].

By application of the 5-step sequential evaluation, the ALJ found that plaintiff had not been

---

[1] At that time, she said she was living with her boyfriend with whom she had an off and on relationship for over 13 years. [R. 287].

employed since January 19, 2006. Her severe impairments are history of congestive heart failure, obesity and depression, and that these impairments "cause more than a minimal limitation in her ability to perform basic work-related activities." [R. 14]. He found that her impairments do not meet or equal one of the listed impairments and that she is unable to return to her past work. The ALJ found that plaintiff had the residual functional capacity ("RFC") to perform sedentary work, limited to simple and repetitive tasks, with only incidental contact with the general public. In considering her young age, education, work experience, RFC, and after consulting a vocational expert, he found she could perform such sedentary work as assembler, miscellaneous laborer, or escort driver; and that such jobs existed in sufficient numbers in the regional and national economy. [R. 16, 22]. This finding was made at the fifth step in the five step inquiry outlined in Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[2]

## Discussion

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C.§ 423 (d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). The term "disability" is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. A claimant is determined to be disabled only if she is unable to do her previous work; and considering her age,

---

[2] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents her from engaging in her past employment, and (5) has an impairment which prevents her from engaging in any other work, considering her age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) citing Williams v. Bowen, 844 F.2d at 750-52.

4

education, and work experience, cannot perform any other kind of work in the regional or national economy. 42 U.S.C. § 423(d). To meet this burden plaintiff must provide medical evidence of an impairment and the severity of an impairment during the time of her alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). Disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a).

Plaintiff raises one issue on appeal. Whether the ALJ's assessment of plaintiff's depression is supported by substantial evidence. Plaintiff disputes the ALJ's finding that (1) she had experienced an improvement in her psychological symptoms through counseling and medication, (2) Dr. Stephanie Crall's assessment of plaintiff's daily living activities supports the ALJ's decision, and (3) the opinion of the consultative physician was supported by medical evidence of record.

To support his finding that plaintiff's mental impairment does not preclude her from performing sedentary work with the specific limitations imposed, the ALJ made certain findings that are uncontested in this appeal. First, the ALJ found that plaintiff's heart problem would not preclude her from performing work consistent with his RFC assessment. Thus, plaintiff's claim that she is depressed because her heart condition prevents her from working has no merit, because plaintiff does not challenge the ALJ's finding that her heart condition does not preclude work. Second, plaintiff does not challenge the ALJ's credibility findings, which included the determination that the medical

evidence did not support plaintiff's statements concerning the intensity, persistence and limiting effects of her mental impairments.

The ALJ properly looked to objective medical evidence of record to determine the limiting effects of plaintiff's depression. He noted the absence of any medical source opinion which would support plaintiff's claim that her impairments are disabling. "As for opinion evidence, the record does not contain any opinions from treating or nontreating physicians indicating that the claimant is disabled or has limitations greater than those determined in this decision." [R. 21]. In the absence of an opinion by plaintiff's treating physicians, the ALJ properly considered the evidence presented by physicians employed by the State Disability Determination Services and found that those opinions were consistent with the medical evidence of record. The ALJ summarized the mental status examination performed by Dr. Stephanie Crall, Ph.D. He noted from Dr. Crall's reports that the onset of plaintiff's depression was the birth of her baby in January 2006. The ALJ noted that since the birth of her baby, plaintiff reported to Dr. Crall certain symptoms of depression, but denied having a history of any psychotic illnesses, such as "hallucinations or episodes of mania or hypomania." [R. 220]. The lack of psychotic features was noted by Dr. Crall in her diagnosis. The ALJ referenced Dr. Crall's notation that plaintiff reported "she was not going to any psychological counseling or therapy at that time." [R. 18].

As to Dr. Crall's assessment, plaintiff challenges the ALJ's omission of Dr. Crall's opinion that plaintiff's "ability to complete most activities of daily living appropriately and in a timely manner was likely poor." [Dkt. # 12 at 3]. Plaintiff's argument is without merit because the ALJ rejected this portion of Dr. Crall's opinion as subsequently shown in the ALJ's decision. He states:

> Although the claimant has described daily activities which are fairly limited, two

6

factors weigh against these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with reasonable degree of certainty. Second, even if claimant's activities of daily living were truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, <u>as opposed to other reasons</u>, in view of the medical evidence and <u>other forms</u> discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the <u>other factors</u> discussed in this decision.

[R. 20]. (emphasis added). In reference to factors discussed in his decision, the ALJ cited plaintiff's medical records from Hillcrest Medical Center showing an opinion by Raj Chandwaney, M.D. that plaintiff needed close monitoring through her postpartum period, but that her cardiac status would compensate once the baby was delivered and that her systemic vascular resistance would markedly increase at that time. This citation is medical evidence that plaintiff's heart condition would improve in time. The ALJ also relied on objective medical evidence, citing a January 21, 2006, x-ray which "revealed no acute cardiopulmonary process or significant interval change." [R. 18]. The ALJ relied on medical records dated May 10, 2006 from Alan Kaneshige, M.D. with the Heart Failure Care Center for Hillcrest Medial Center. "Dr. Kaneshige reported that although the claimant gets fatigued, 'she is able to get around without too much difficulty and does take care of her daughter' and 'She has not had any syncopal episodes.' He further noted, 'Overall, she has been feeling fairly well.'" [R 18]. The ALJ cited clinical notes, showing that her own physicians questioned her credibility and motives. "The claimant was evaluated by the COPES team due to the threat of suicide, and while it was reported that the claimant was actively suicidal, it was also noted that the claimant was 'saying what we need to hear just to get her meds changed because she does not think Zoloft is working.' The claimant's Zoloft was discontinued, and she was prescribed Paxil." [R. 19]. The ALJ cited medical records dated August 9, 2006, which reported that plaintiff was "feeling better since her last

7

visit." The ALJ points to factors other than from a medical origin that results in plaintiff's mental distress. She reported continued episodes of depression about twice a week and anxiety attacks after "yelling at her children." [R. 19]. Plaintiff stated she was "angry and irritable" and requested tranquilizers. This evidence supports the ALJ's conclusion that the degree of limitations in plaintiff's daily activities may not be attributed to her "medical condition" as "opposed to other reasons" in view of the evidence of record.

The ALJ also relied on the physical and mental RFC assessments made by state medical consultants. In conducting her physical RFC, Shafeek Sanbar, M.D. reported that plaintiff exhibited "no nonexertional limitations" and opined that she had the RFC to perform light exertional work. [R. 20, 239-246]. The ALJ noted that Carmen Bird, M.D. confirmed this assessment on November 20, 2006. [R. 20, 256]. As for her mental RFC, the ALJ cited Dr. Cynthia Kampschaefer's assessment that plaintiff exhibited only moderate functional limitations in her activities of daily living, social functioning and in maintaining concentration, persistence or pace. The ALJ adopted Dr. Kampschaefer's mental RFC assessment based on the evidence referenced above and incorporated her opinion, "She can do simple tasks that do not require intense concentration." [R. 15-16, 237]. Thus, the Court finds no merit in plaintiff's contention that the ALJ erred in failing to accept Dr. Crall's opinion as to plaintiff's limitations in daily living activities.

Plaintiff challenges the ALJ's determination that records from Family& Children Services ("F&CS") show that plaintiff's mental impairment improved through counseling and medication. The ALJ reviewed plaintiff's treatment records with F&CS from October 10, 2006 through June 18, 2007. Plaintiff relies on her own subjective complaints of mood swings and depression contained in these records. However, an overall review of those records, shows that the ALJ's conclusion is

supported by substantial evidence. On October 19, 2006, the clinician who conducted the intake psychosocial evaluation of plaintiff, reported she had extreme anxiety, worried all day, every day, had severe mood swings 3 to 5 days a week, sleep disturbance, nightmares, loss of concentration, and was irritable and angry 6 to 7 days per week. [R. 275]. A case management assessment of needs conducted on that same date showed plaintiff's greatest needs to be the areas of employment/economic self sufficiency, education/ training, family relations and recreation/leisure. Plaintiff's only health need is marked as "mental health" but her strength in that category was her "health insurance coverage." [R. 274]. On November 20, 2006, plaintiff reported she did not have any current medical problems but that her mood was depressed. Plaintiff was prescribed 20 mg of Cymbalta to be taken twice a day to treat her depression and anxiety. [R. 271]. On January 9, 2007, plaintiff reported that she was "real emotional" and experiencing anxiety attacks. She reported going to the emergency room at Hillcrest Medical Center, and was returning to F&CS to get medication refills. She had been without medication for one week and was told at Hillcrest to get her medication refilled with F&CS. The clinician noted that plaintiff was at home with four children. [R. 270]. Plaintiff was prescribed 100 mg of Zoloft to be taken once a day to treat her depression and panic attacks. On February 28, 2007, plaintiff reported that she was not having any current medical problems and her mood had improved, stating that "some days are better than others." [R. 269]. Plaintiff was prescribed 100 mg Zoloft to be taken once a day for depression and anxiety. On May 22, 2007, comments contained on a "psychiatry note" included plaintiff's statement that the onset of her depression was her "near death during labor," her inability to work was due to her "congestive heart failure," and that all her symptoms were "triggered postpartum." Plaintiff reported she applied for disability and that she needed SHI [supplemental health insurance] for her 16 month old baby.

The last entry is a notation that plaintiff "wants to go back to work." [R. 307]. The June 18, 2007, entry is a record of plaintiff's medications. Based on this evidence, the ALJ entered the following findings:

> The claimant received regular outpatient treatment from Family and Children Services covering period from October 10, 2006 through June 18, 2007 for complaints of depression and anxiety. The intake report included mood swings, sleep disturbances with nightmares, impulsive behavior, difficulty with concentration and focus, and loss of interest. The claimant received counseling sessions, therapy, and medication management for control of her depression and anxiety. The claimant reported on May 22, 2007 that she wanted to go back to work. A thorough review of those treatment records indicates that she had improved in her symptoms with counseling and medication.

[R. 19]. The Court finds that the ALJ's finding on this issue is supported by substantial evidence. Specifically, plaintiff went from feeling extreme anxiety all day, every day on October 10, 2006, to a desire to return to work on May 22, 2007. As previously stated, the Court may neither reweigh the evidence nor substitute its discretion for that of the ALJ. Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007). The Court may render a finding of no substantial evidence only if other evidence overwhelms the evidence upon which the Commissioner relied, or if the Commissioner's evidence constitutes mere conclusion and not actual evidence. Descheenie ex. Rel. Descheenie v. Bowen, 850 F.2d 624, 627-628 (10th Cir. 1988). To the extent plaintiff is asking this Court to reweigh the evidence, that is an impermissible request. The Court can only review the sufficiency of the evidence, not its weight, see Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007), and there is sufficient evidence to support his finding on this issue.

Finally plaintiff contends the ALJ erred in adopting Dr. Kampschaefer's mental RFC assessment. Plaintiff contends that Dr. Kampschaefer's review of the evidence was limited to medical records dated prior to July 25, 2006, and he failed to take into consideration a complete

picture of plaintiff's mental impairments. As illustrated above, the ALJ reviewed plaintiff's medical records to show that Dr. Kampschaefer's mental assessment of limitations in the three broad functional areas of daily activities, social functioning, and concentration, persistence and pace was consistent with the medical records as a whole. The ALJ also imposed restrictions in his RFC assessment to accommodate plaintiff's severe mental impairment and consulted a vocational expert as to the availability of work consistent with the restrictions he imposed.

Thus Court finds that the ALJ followed the proper legal standard and his decision is supported by substantial evidence of record. Plaintiff raises no other issues in this appeal.

## **Conclusion**

Based on the foregoing, the Court AFFIRMS the decision of the Commission denying disability benefits to plaintiff.

SO ORDERED this 28th day of March, 2011.

_____
T. Lane Wilson
United States Magistrate Judge